PHILLIP HARVEY LIKENS v. STATE OF INDIANA

[No. 3-1076A238. Filed July 12, 1978. Rehearing denied September 13, 1978.]

*Harriette Bailey Conn,* **Public Defender of Indiana,** *Ihor N. Boyko,* **Deputy Public Defender, for appellant.**

*Theodore L. Sendak*, Attorney General of Indiana, *Charles D. Rodgers*, Deputy Attorney General, for appellee.

GARRARD, J. — As the result of a plea bargain appellant Likens pleaded guilty to charges of rape and robbery.[1] In return a count for commission of a felony while armed and a separate robbery charge were dismissed. Likens was sentenced to 2 to 21 years imprisonment on the charge of rape and to 10 to 25 years on the robbery charge. Three months later he petitioned for post conviction relief. This is a belated appeal from the denial of his PC 1 petition.

### I. Motions for default and summary judgment

During the course of the post-conviction hearing it was discovered that the state had not filed an answer to Likens' petition as prescribed by PC 1, § 4(1). Thereupon the state moved for permission to file an answer in denial, either orally or in writing. Likens, on the other hand, moved for default and for summary disposition under § 4(6). The court permitted the state to orally deny the petition, precluded it from asserting any new matters and denied both of Likens' motions. These denials are assigned as error.

PC 1, § 4(1) requires the state to respond to a PC 1 petition within thirty days or such further reasonable time as the court may fix. In addition, "[t]he court may make appropriate orders for amendment of the petition or answer, for filing further pleadings or motions, or for extending the time of filing any pleading."

Granting a default is a matter within the sound discretion of the court and is reviewable only for abuse. *Payne v. Doss* (1976), 170 Ind. App. 652, 354 N.E.2d 346; *Green v. Karol* (1976), 168 Ind. App. 467, 344 N.E.2d 106. Likens asserts no surprise from the state's position or the evidence produced. In fact it appears that his counsel and the prosecutor had conferred for three hours before the hearing and both were prepared to proceed. The absence of a written answer was not even noticed until the hearing was under way. It ap-

---

1. The plea was entered prior to enactment of IC 35-5-6-1 relating to disclosure and acceptance of plea bargains and our resolution of the assigned errors is governed by the prior law.

pears that the purpose of requiring an answer, i.e., to advise the petitioner of the state's position regarding his claims, was satisfied. *Compare State v. Kolb* (1974), 162 Ind. App. 115, 318 N.E.2d 382, where the state was precluded from asserting the procedural sufficiency of a petition by failing to assert it by answer.

We find that Likens has failed to demonstrate that the court abused its discretion in refusing a default. Moreover, there was no error in refusing summary disposition. Since there was no default granted, Likens was not entitled to have the allegations of his petition taken as true. Because the proceeding challenged a sentence imposed following a guilty plea, the court was required to make the transcript of the arraignment a part of the record. PC 1, § 4(4). There were genuine issues of material fact which precluded judgment as a matter of law. *King v. State* (1974), 161 Ind. App. 196, 314 N.E.2d 805.

## II. Advisement of constitutional rights

Likens asserts that the court failed to adequately advise him of the rights he would waive in entering a plea of guilty. He alleges that he was not told he was waiving his privilege against self-incrimination or the right to confront his accusers.

The arraignment record at the proceeding when the plea was accepted[2] discloses the court advised Likens of the following:

> "At a trial and during this trial, one of your fundamental constitutional rights is, that you may not be compelled to testify or give any evidence against yourself."

> "You are giving up your right to face the witnesses here in court .... And you are also giving up your right to have your attorney cross-examine the witnesses."

The court then inquired, "Do you understand those things that you are giving up." Likens responded that he did.

Likens' assertions are meritless.

---

2.   One month earlier at the initial arraignment, the court advised Likens, "... you need not say anything; you need not do anything ... it is the state's obligation ... to prove guilt beyond a reasonable doubt."

### III. Assertion of innocence

Likens next asserts that his guilty plea should not have been accepted because at sentencing he asserted his innocence. In support he cites *Harshman v. State* (1953), 232 Ind. 618, 115 N.E.2d 501.

We first note that neither at sentencing nor at any other time did Likens assert he was innocent of any of the crimes charged. What he did do at the sentencing hearing was assert no memory of committing the offense.[3] In *Harshman* a guilty plea was set aside where the defendant at the guilty plea proceeding asserted no memory of committing the offense on the ground of intoxication. However, several factors distinguish the acceptance of Likens' plea from that in *Harshman*.

The basic rule guiding us in the acceptance of guilty pleas is that they must be made knowingly, voluntarily and intelligently. One of the re-

---

3. "A.   I took what I thought was a Bennie, you know they're used to keep people awake and, I was plannin' on drivin' back to Louisiana, and I was wantin' to stay awake and drive straight through, but it evidently wasn't, what uh it was said to have been.

THE COURT:   I see, and, then he says that—states that you were accused by Jane Ezra of pulling a gun on her, tying her up, and raping her, and, then, it is the Probation Officer's comment that you kept repeating and it sounded like you were trying to use drinking and that sort of activity as an excuse, and loss of memory, too.

A.   It might have sounded like that, but, I wasn't.

THE COURT:   I see, and, then, of course, the Probation Officer makes no recommendation. The next question is, do you have anything you want to add to this? Or, do you have anything you want to take away?

MR. LIKENS:   Well, naturally I'm sorry about what happened, but, I know sorry don't make it right. Uh, it's hard enough going to prison, for somethin' that you know you done, but it seems harder going to prison for somethin' you don't even realize.

THE COURT:   I'm having a little difficulty in making out what you are saying.

MR. LIKENS:   I said, it's hard enough goin' to prison for somethin' you done, uh, I've pleaded Guilty, and, I know I'm going, but, it's even harder knowin' you're goin' to prison for something that you can't even remember. I'm not usin' that drug, or alcohol as an excuse for what I done, and, uh, I don't want to sound like uh I'm on drugs, because it's never been on my record, and I'm not familiar with them, that's why I was taken in by what they said was a Bennie."

quirements we have imposed is that there exist a factual basis for the plea. This requirement responds to the justice function of the courts. In part it is designed to assure the court that there are reasonable grounds to believe that a crime was in fact committed and the accused participated. It also serves as evidence that the proffered plea is being offered intelligently, i.e., with an understanding that the facts are such as may support a conviction if the accused is subjected to trial. Where the question before the court is not merely whether the accused is willing to plead guilty to *the* crime with which he is charged, these two purposes tend to diverge. With judicial recognition of plea bargaining arrangements, that divergence may result in separately identifiable issues because the element of intelligence in entering the proffered pleas may be found in the *quid pro quo* for the particular plea rather than the factual basis which would support a conviction on the pleaded-to offense. *See, e.g., North Carolina v. Alford* (1970), 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162; *Campbell v. State* (1975), 262 Ind. 594, 321 N.E.2d 560; *Boles v. State* (1973), 261 Ind. 354, 303 N.E.2d 645; *King v. State, supra.*

In *Harshman* the accused was not represented by counsel, who presumably would have discussed with him the nature of the charges and their relation to the facts. From the opinion it does not appear that a plea bargain was involved. No evidence was produced to establish a factual basis for the plea. On those facts coupled with the accused's statement that he had no memory of the events, the Supreme Court held the record inadequate to establish that the plea was intelligently and understandingly made.

By contrast Likens was represented by counsel when the plea was tendered and had been represented since the inception of the proceedings. At the guilty plea proceeding the state introduced the deposition of the victim describing commission of the crime and identifying Likens as the perpetrator. In return for the plea the state was dismissing both the count of the information which carried the most severe penalty and a separate robbery charge. While Likens did assert no memory of the offense, the assertion was equivocal.[4]

---

4. We need not ignore that aspect of human nature which seeks to mitigate, either

The court was justified in determining there was a factual basis for the plea. It was also justified in determining that the plea was understandingly and intelligently entered.

### IV. Advisement on sentences

Likens asserts that his plea should have been set aside as involuntary and not intelligently made because of incompetence on the part of his trial counsel. He also asserts that the court did not adequately advise him of the sentencing consequences of his plea. In support of these contentions he claims that his counsel advised him that he would receive only a ten year determinate sentence under the plea bargain. He further contends that counsel led him to believe that if he was tried and convicted he could receive consecutive sentences.[5]

It must be initially recalled that in proceedings for post-conviction relief, the burden of proof rests upon the petitioner. Where the evidence or the reasonable inferences that may be drawn from it are in conflict we will not reverse the trial court's determination unless no reasonable mind acting on the evidence presented could have reached the conclusion arrived at by the court. PC 1, § 5; *Roberts v. State* (1975), 263 Ind. 53, 324 N.E.2d 265.

At the post conviction hearing Likens testified that his attorney advised him that upon his plea he would be sentenced to ten years "flat." The attorney testified and denied this. Likens' appeal therefore seeks to have us redetermine credibility, a task we eschew.

However, there is a more meaningful reason for denying his claim. We cannot know precisely what was said between Likens and his

---

to self or to others, the severity of an action through the assertion that the offender has no memory of the events. The inference sought is that the action was therefore not a matter of the cool deliberate calculation of the actor.

5.   It should be noted that IC 35-12-1-1, applicable to the charge of committing a felony while armed, which was dismissed as a result of the plea bargain, states that the offense therein described shall be a "separate felony" and that the sentence upon conviction may be ordered served consecutively to the sentence adjudged "for any additional crimes being attempted or committed at the same time." Our Supreme Court has held, however, that rape and robbery are to be treated as lesser included offenses and that a sentence may not be imposed for both the primary felony and its commission while armed. *See Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766 (rape); *Dembowski v. State* (1968), 251 Ind. 250, 240 N.E.2d 815 (robbery).

counsel. It is entirely possible that one misunderstood the other regarding either the legal or practical consequences of the plea.

This is the very kind of dilemma that *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 and its progeny, including such statutory enactments as IC 35-4.1-1-3 are designed to defuse. It would be a strange paradox indeed were we to require the court to explain at length a defendant's rights and the consequences of pleading guilty and then when the court did so, vitiate the proceedings because at a prior time someone else, attorney or acquaintance, had misinformed the defendant as to one or more of those matters.

In the record before us the trial judge, before accepting the plea, advised Likens that the penalty for rape was 2 to 21 years,[6] and that the penalty for robbery was 10 to 25 years. When asked if he understood this, Likens replied that he did. When later asked if he had any questions whatever, Likens replied that he did not. Even when sentence was subsequently pronounced Likens evidenced neither surprise nor objection. Instead he thanked the court. Under these circumstances the court could have properly determined that as to the prospective sentence the plea was entered understandingly, intelligently and voluntarily even if Likens had at some point in time believed he would be sentenced to ten years.

Likens' other assertion is that the court erred when it failed to advise him that if he pleaded not guilty and was convicted, his sentences would run concurrently. As an apparently alternative argument he urges incompetence of trial counsel in not explaining the prospective effect of robbery or rape constituting a lesser included offense to the charge of committing such felonies while armed. Underlying these claims is the supposition that a guilty plea may be invalid where it is motivated by patently erroneous advice from counsel which led the defendant to mistakenly believe that if he were tried and convicted of the offenses with which he was charged, the sentences would all run consecutively and he would face a term of im-

---

6. The advice that conviction for rape carried an indeterminate sentence was erroneous. While that error must be corrected, it is not supportive of Likens' contention that he thought he would receive a sentence of ten years.

prisonment many times more severe than the law would actually allow.[7] We do not dispute that where shown to exist such misadvice from defense counsel is one of the facts and circumstances which the court should consider in assessing the voluntariness of the plea. For this reason we agree with appellant that where a plea is being tendered in a case involving multiple counts, it would be beneficial to all for the trial judge to ascertain *on the record* that the accused understands the nature of the potential penalty should he elect to go to trial. Even so, we find that the court committed no reversible error.

The issue actually presents two questions. The court did not advise Likens of the full application of the penalty provisions if he elected to go to trial and was convicted on all charges. Was this reversible error?

IC 35-4.1-1-3 provides that the court shall not accept a guilty plea without first addressing the defendant and

"(d)  informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;"

While the statute speaks of "the offense charged," it does so solely in the context of receiving a guilty plea. Clearly the understanding and therefore voluntary nature of a plea is questionable when the accused is unaware of the penalty he *may* receive if the plea is *accepted*. Where sentencing latitude exists the defendant will be adequately advised[8] if he understands the range of potential penalties. *See, e.g., Gross v. State* (1975), 167 Ind. App. 318, 338 N.E.2d

---

7.  A plea is not vitiated merely because the defendant seeks to avoid a more severe penalty which might be imposed on conviction, even though he later discovers that he misapprehended the likelihood of such penalty being imposed. *Brady v. U.S.* (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *Lockhart v. State* (1971), 257 Ind. 349, 274 N.E.2d 523. On the other hand, where misadvice from counsel leads the defendant to believe he can receive a sentence much longer than the law would allow, at least two courts have permitted the plea to be set aside. *Hammond v. U.S.* (C.A. 4, 1975), 528 F.2d 15; *Cooks v. U.S.* (C.A. 5, 1972), 461 F.2d 530.

8.  The statement excludes from consideration as a *separate* question, whether he has been actively misled into believing he has an agreement for some specific penalty. *See Dube v. State* (1971), 257 Ind. 398, 275 N.E.2d 7.

663. The reason such understanding is necessary is that the sentence is the consequence of the plea. The same cannot be said regarding advice which concerns charges which are to be dismissed if the plea is accepted. Such advice does not concern the consequences of the plea. It concerns, instead, the *motivation* for entering the plea, and motive alone will not determine voluntariness. *Brady v. U.S., supra; Lockhart v. State, supra.* Thus, it does not follow that the court *must* advise the defendant of potential sentences for offenses to which he will not be subjected if his plea is accepted.

There is an additional reason for not imposing the requirement that the court when confronted with a proffered plea must advise an accused of all the sentencing alternatives should he instead elect to go to trial. The advice, if given, could be both speculative and misleading since the prosecution is neither bound to submit to the jury every charge in the information, nor is it barred from commencing additional criminal proceedings because the defendant is already charged with a crime. Because of these uncertainties it would be unduly time consuming and still potentially confusing to the accused to impose such a requirement. We conclude that to establish the voluntariness of a guilty plea the trial court is not required to ascertain that the accused fully understands the potential penalties and their application for other offenses which the state has agreed not to prosecute in return for the plea.

There remains then the factual question of whether Likens' plea was nevertheless not voluntary in fact because his attorney misled him into believing that upon conviction after trial he could receive a much longer sentence than the law would actually allow.

We find the court could have properly concluded, as it did, that Likens failed to carry his burden of proof.

The evidence is in conflict concerning whether the attorney advised Likens that he could not be sentenced for both the underlying felony and its commission while armed. Perhaps more significantly, it should be recalled that the statute, IC 35-12-1-1, provides for a determinate penalty of up to 30 years and specifies that it may be imposed to run consecutively to the penalty imposed "for any additional crimes being attempted or committed at the same time."

While the court's decision in *Coleman v. State* (1975), 264 Ind. 64, 339 N.E.2d 51, decided a year later, casts doubt upon the potential for a consecutive sentence under our facts through its interpretation of "at the same time," it could well have appeared to competent counsel in 1974 that Likens might receive a thirty year determinate sentence for either armed rape or armed robbery, or both, and that in the latter event or upon proper convictions of rape and armed robbery or armed rape and robbery, potential for consecutive sentencing existed. Under such circumstances, advice that consecutive sentences might result (if such advice were given) does not rise to the level of demonstrating ineffective assistance of counsel.

### V. Ineffectiveness of counsel

Likens further claims he was deprived of the effective assistance of counsel because his attorney did not challenge the victim's identification of Likens or hire an investigator. He does not assert how he was harmed by these omissions. On the latter point there was testimony that the attorney felt hiring an investigator would be fruitless in view of the strength of the state's case and that Likens instructed him not to hire one. On the former, we note that the deposition of the prosecuting witness was taken, that there appeared to be ample basis for identification since the crimes took place in her apartment in early afternoon and her assailant had a distinctive tattoo on his hand. The assertions fall short of demonstrating ineffective assistance of counsel.

### VI. Sentence for rape

Finally, appellant correctly argues that the court erroneously imposed an indeterminate rather than a determinate sentence on the rape conviction. IC 35-13-4-3. The crime was committed March 4, 1974. The amendment to the rape statute calling for determinate sentences was enacted February 15, 1974 and contained an emergency clause. Therefore, as required by IC 35-8-5-1 for defendants receiving an indeterminate sentence when a determinate sentence is required, Likens is entitled to have the sentence for rape changed to a determinate term equal to the minimum term prescribed in the act under which he should have been sentenced. The minimum term for rape is two years. Accordingly, the sentence for Likens' conviction for rape is hereby corrected to a determinate term of two (2) years.

Modified and affirmed.

Buchanan, C.J. (sitting by designation) Concurs.

Staton, J. Concurs in Result and files separate opinion.

### OPINION CONCURRING IN RESULT

STATON, J. — I concur in result since a factual basis does not depend upon the defendant's independent recollections of the crime. The factual basis here was adequate to support the acceptance of a guilty plea.

I further concur in result since the range of sentences possible under the indictment or information is necessary to establish voluntariness. Without a full understanding of his action, pleading guilty to the charges and standing trial under a different set of charges, the defendant's guilty plea is not voluntary. Likens has failed to carry his burden of establishing that he was erroneously advised and that he was prejudiced.

NOTE — Reported at 378 N.E.2d 24.